Good morning, and may it please the Court, Matthew Zubin on behalf of plaintiff Antonio Hinojos and with me is my co-counsel Derek Emdy. I would like to reserve three minutes for rebuttal, if I may. The California legislature has twice outlawed misrepresentations concerning price discounts. It has done so because they are representations of fact, they are deceptive, and they influence consumer behavior,  There's no question in this case that plaintiff has adequately alleged that Kohl's violates California law by misrepresenting the amount or existence of price discounts. The only question before the Court is whether the plaintiff, who alleges that he relied on the misrepresentations and who alleges that he bought products that he would not otherwise have bought absent the misrepresentations, has suffered an economic injury or damages sufficient to confer a standard. How would you measure damages under the Kwikset theory in this case? Well, Kwikset specifically says that you don't need to measure the damages at the pleading stage. It could be a range, it could be anything. What would it be the difference between, would it be the cost of the whole product because the individual wouldn't have purchased it unless he was thinking he was getting a deal, or would it be the difference between what the alleged price reduction was and what the person actually paid for the product? Well, when we're talking about damages, that goes to the Consumer Legal Remedies Act. The unfair competition law and the false advertising law don't allow for damages, they allow for restitution, which is an equitable remedy, of course, and they also allow for an injunction. But when it's coming to the measure of what that is, there is a huge range of what it could be, and we don't need to articulate exactly what that is. Yeah, but I would like you to articulate it because this is in the context of a class action, and so I would want to understand how it would apply in a practical way. Depending on the evidence, when we're talking about an equitable remedy under the unfair competition law or the false advertising law, it could be anything from the entire purchase price down to, theoretically, a couple of pennies, I guess. But what it would be is, I think, one of the main pieces of evidence, and we just haven't gotten it, so it's hard for me to pinpoint what it would be because there's different theories as to what it could be. It could be measured as the amount that the plaintiff would have spent had they been told the truth. In this case, the plaintiff just generally alleges, I would not have bought the products but for the misrepresentation, so I would not have spent that money. Again, I hate to limit myself at this point in pinpointing exactly what an appropriate form of restitution would be without further evidence. There are different theories, of course. We could also come in and say, you represented that the discount was 50% off the regular price. Well, if the regular price is really the sale price, maybe the plaintiff should get 50% off the true regular price, which is the amount that they paid. Again, there's a variety of different arguments we could make, and I don't think at this point I need to limit myself, but it could be an entire list. You don't need to limit yourself. I just wanted to apply Kwikset to this reduced price scenario. Okay. If I've answered your question? Yeah, you've been fine. And, again, Your Honor brought up Kwikset. And the answer to the question of whether a plaintiff has standing is found in this one seminal case by the California Supreme Court, which is the Kwikset opinion. And Kwikset broadly and repeatedly holds the same thing. It says that ---- I forgot. Was Kwikset decided after the district court decision or before? Well, there's actually three decisions in this case. We had a motion to dismiss that was decided before the California Supreme Court issued its opinion in Kwikset. Right after our court dismissed the unfair competition law and false advertising law claims, the California Supreme Court came out with its Kwikset decision, and we filed a motion for reconsideration. And our district court judge denied the motion for reconsideration and basically said Kwikset doesn't apply. And then the defendants did not originally move to dismiss our Consumer Legal Remedies Act claim. After they got the denial of our motion for reconsideration, they then filed a motion for judgment on the pleadings on our Consumer Legal Remedies Act claim, our final claim, and the judge granted that. So Kwikset came out somewhere in between these. Okay, thanks. And Kwikset broadly and repeatedly holds the same thing. It says that a consumer suffers economic injury whenever they spend money that they would not otherwise have spent absent a material misrepresentation. The holding is very clear. It's unambiguous, and it's binding on a federal court sitting in diversity. It completely disposes of the issue before this court. The district court erred because it read Kwikset too narrowly. It either misread the opinion or ignored its teachings altogether. It read Kwikset as being limited to cases involving misrepresentation concerning the characteristics of a product. According to the district court, economic injury can only stem from misrepresentations concerning the composition, effects, origin, and substance of an advertised product. But Kwikset is not so limited. It broadly applies to any material misrepresentation of fact, and that's what we've alleged in this case. In fact, the ---- It was a labeling case, wasn't it? Well, I think that's an interesting question because what is a label? It's a misrepresentation case, and the opinion speaks broadly about misrepresentations and different types of misrepresentations. And when we talk about a label, what is a label? A price tag is a label as much as a made-in-the-USA tag. I don't know that there's any particular form or definition of label. It really comes down to a misrepresentation of fact. And what we're alleging is under California law, when you say the regular price is $30, that is a representation of fact. The Business and Profession Code specifically says that when you use a former price, it has to be the prevailing market price of that product in the last three months. So it is an affirmative representation of fact and value. You're saying the price tag is the same thing as the label? When it has a regular price, it certainly is because it is representing fact. It is representing, under California law, the prevailing market price of that product in the last three months. It is an objective and verifiable fact. And in our case, we're alleging it was a lie. So it is a misrepresentation of fact. The QuickSet holding repeatedly says how broad it is and how it's not limited to functional types of characteristics. It says there are innumerable ways in which economic injury may be shown. It says that nothing in the open-ended phrase, lost money or property, supports limiting the types of qualifying losses to functional defects. Right, but in QuickSet, the label would induce the customer to pay more than they otherwise would have paid. And under your theory, that's not necessarily the case. That's not true, Your Honor. With respect, by alleging that you would not have bought the product but for the misrepresentation, that is saying I paid more than I would have absent the misrepresentation. That's the whole import of that allegation. I would not have spent money but for the misrepresentation. You're de facto paying more than you would have absent the misrepresentation. The company is extracting money from you that they would not have gotten absent the misrepresentation. And what I think you're getting to is one of the defendant's arguments, which is that you have to show an incremental difference in value between the product as it is and the product as it's represented. And that's not what QuickSet talks about. QuickSet talks about a difference in value between the product, between what the consumer values the product as it is and what the consumer values the product as misrepresented. So if the consumer subjectively says that I am willing to pay, you know, $10 for a product based on my belief that it is X, and in this case X would be worth $20, that's okay. But if I find out that it's not worth $20 in the market, that regular price was false, I would not have been willing to pay that $10. I am paying more than I would have otherwise have paid. And the QuickSet opinion really goes into detail about this analysis, and it is expressly not limited to any type of functional defect. It applies equally to any type of material misrepresentation. And, again, I think it's very critical for the court to understand that under California law, business and professions code section 17501, a regular price tag, when you're using it to say this is a former price, whether it says regular or original or formerly or whatever, whenever you're making that representation, you are making an objective, verifiable representation of fact that that price was the prevailing market price for that product in the preceding three months. And we're alleging that that was false. So it is a false. What do you expect to prove with respect to that? I expect to prove that the prevailing market price in the immediate three months was far less than the regular price tag. The amount that he paid? No, I don't know about that, but definitely less than the regular price that they said. And by saying regular price, you are saying this is the value of the product. Again, business and professions code section 17501 speaks directly on this point. It says that the value or worth of anything advertised is the prevailing market price in the last three months. No price shall be advertised as a former price unless the alleged former price was the prevailing market price in the last three months. It defines the value or worth of a product as the prevailing market price in the preceding three months. And you expect to show that the prevailing market price was not the $299 that they advertised? It was not the regular price. The $299 was not the regular price. Correct. Correct. And taking our allegations as true, I mean, that has to be taken as true at this point. We've definitely alleged that. So the consumer thought that he was getting a product that had a value, a market value of $299. Correct. And he was willing to pay 50% of that. Correct. But in fact, had he known that it was only selling at, what, $225? Or maybe it was really selling at He wouldn't have paid $149. Correct. Or maybe it was really selling at $149. Yes. In fact, maybe he was not getting any discount whatsoever. But the California legislature has said that when you use a regular price tag, you are objectively saying this is the prevailing market price. And we're alleging that it was a lie. And I don't know anybody that's not walked into a store at some point or another and come out buying something that they didn't intend to buy, but they thought they were getting a good deal. They were getting a discount. Boy, it's too good to pass up. I'm going to buy something that I And you're spending money. The California legislature says, hey, that's all fine and good, but don't lie about it. You can't extract money from people and get them to pay money that they would not have otherwise have paid absent a price discount.  They have lost money, according to Kwikset. Kwikset does an economic analysis here, and it says the injury occurs at the moment of transaction. The moment you spend money, that's when the injury occurs. Now, there's the defendant's argument, which says, well, you got something in return. You got something worth the money you paid, maybe. But Kwikset says you ignore these pass-on-sale defenses because now you have a product that you would not have bought. You didn't want it. Had you known the truth, you never would have had it. You never would have spent the money. And it really goes to unfair competition because the Kwikset opinion talks about parallel pricing where multiple retailers have the same product and they compete on different levels, but they can't lie about things. They can't lie about why it should be bought at one store as opposed to another. And the California legislature has not once but twice said you can't lie about price discounts. And it did so in the Consumer Legal Remedies Act, the same statute that had outlawed misrepresentations about the manufacturing process or the country of origin. So the California legislature put misrepresentations about the amount, existence, or reasons for a price discount on the exact same footing as misrepresentations about a manufacturing process or a country of origin. The California legislature said these are all equal and they cause equal harm. And that's where the district court erred. It said, well, I'm not going to put a price discount on the same level and playing field as a misrepresentation about a country of origin. But with respect to the district court, that's not its prerogative. It doesn't get to overrule the California legislature, which has put them on equal footings and said that they are material misrepresentations. I don't know if my time here is concluding a rebuttal time or if I'm going to be able to continue. No, we'll give you two minutes for rebuttal. Okay. Unless the Court has any other questions. Thank you. May it please the Court. James Speier, Borough Reporter for Defendants Coles Corporation and Coles Department of Justice, and I'm here to ask a question. I have a question for Judge Wardlaw. I think you hit on an important question, and that is that in this case there simply has been no economic injury suffered by the plaintiff here. I don't understand. It came up on a motion to dismiss. Correct. And as a matter of proceeding. And the facts that he alleges. I don't see how you can make that argument or how the district court even ruled that it did at this stage of the proceeding. Because as a matter of. In light of Kwikset. I can explain that. What plaintiff's entire appeal is based on is the absolutist position that simply spending money that you would not otherwise have spent amounts to the lost money or property that is sufficient for standing. The mere expenditure of money that you would not otherwise have spent. I mean, it seems to me if I'm misled into spending my money and I give up my money for something I really wouldn't have bought for. I don't know why. Something I wouldn't have bought. I don't know why I haven't suffered a loss. Because simply expending money that you wouldn't otherwise have spent without examining what you got in return. Where does it say that in Kwikset? Where does it? Yeah. What you just said. It's what Kwikset says, Your Honor, is that what constitutes the lost money or property is not the mere fact that you have spent the money in the first instance. What constitutes the lost money or property is the fact that you have paid more for the product than you otherwise would have. And it is that what Kwikset says is that increment, that difference in value. That costs you. The allegation is I am --. Correct me if I'm wrong, because the way I understand the allegations here is that the regular price is promoted as having been $2.99, 50 percent off the regular price of $2.99. Correct. And they claim that's false. Regular price is really something less. That's correct. But I paid 50 percent of $2.99. Correct? Yes. Now, had I known the regular price was 200, fair chance that maybe I wouldn't have paid $1.49. That's correct. Right? So why isn't that economic loss? Because it makes no sense to say it does violence to our entire concept of what economic injury is and what damage is. Well, you just took my money with a false representation. Yes, but if you don't examine what you got in return for your money --. But you don't want that in return for your money. You wouldn't have spent money for that. I mean, what you see, you can lie and force something on someone who doesn't want it and say, well, you got something with force, but we paid what you paid for it. And the issue here, Your Honor, is not that there was no misrepresentation. The issue here is whether there was economic injury. The issue here --. What if he alleged instead that he wouldn't have bought it, that he paid more for it than he would have otherwise paid for it? Would that satisfy Kwikset? I believe that would satisfy Kwikset, but that is not an allegation anywhere in the complaint. Was he allowed to amend this complaint? He did not request leave to amend the complaint, Your Honor. Because I can see various theories of economic harm, and maybe one would satisfy Kwikset and one wouldn't. I'm sorry, Your Honor? I can see various theories of economic harm. Maybe one would satisfy Kwikset, but the other wouldn't. I agree with that, Your Honor. I agree with that. But to Judge Pius's point, if a plaintiff could satisfy the lost money requirement simply by saying, I wouldn't have bought the product, but for your false statement, you would have completely untenable situations. Well, what's untenable about saying you can't lie to people and get them to buy your product on the basis of your lies? That's not the issue here, Your Honor. The issue here is whether there's an injury, not whether there is a misrepresentation. Well, okay. And the untenable situation. The injury is he got something he wouldn't have bought. He alleged he wouldn't have bought it. That's correct. But in our – in our system, the notion of damages is that – is not simply that you paid money for something that you didn't want, but that you paid money and what you got in return is less in value than what you thought you were buying. It's less in value than what you actually got. So you wouldn't have bought it. And I don't understand why it's not an injury. If you bought something you wouldn't have bought. Okay. And you would not have spent that money. The fact that – it's true. You would not have spent that money. But that – the mere fact that you've spent that money doesn't equal economic injury. That does violence to every traditional notion of damages that we have. Because without examining – Well, that's not my notion, I can tell you. Well – The idea that if you don't, wouldn't have spent the money, and you say to them, well, look at what you got that you didn't want. So, therefore, you're not injured. That may be, as Judge Wardlow pointed out, a psychic injury. You may be disappointed. But that's not an economic injury. You lost your money. Let's say someone buys luggage and the advertised price is $300. Okay. And the sale price is $100. And he buys the luggage and it turns out that the actual value of the luggage is $150. Okay. In that instance, he spent $100. He's gotten $150 worth of merchandise in return. And I would submit it doesn't make sense to say that he has suffered economic injury in those circumstances. I don't want to give you a personal example, but I do understand how one could see a sign in a luggage store which says, bargain, tremendous bargain, $100. That person who goes into that luggage store thinks he's getting a tremendous bargain on a suitcase, which he might or might not buy. And he says, God, this is terrific. I'm going to buy this suitcase for $100. And then when the bill comes, they give him a bill for $500. And he said, oh, God, I misunderstood what the person represented. It really did. He just said $100 something. And then you might still buy it. But if it was a false notice that it was $100 and it was not that you misunderstood, but they falsely told you you can have this suitcase for $100 and it was really $500, you wouldn't have bought the suitcase. And the same thing is here. If they say you're going to get a tremendous bargain on this luggage because it's really worth $1,000 and you can have it for $100, you might well buy it when you wouldn't otherwise. You're out of $100 and you've got a suitcase that you wouldn't have bought. I mean, it affects your decision to buy. The fact that you get something that you might take under other circumstances but wouldn't under these doesn't make it right. I agree. I agree, Your Honor. I agree. It affects your decision to buy. But that's different than economic injury. And under Kwikset, what Kwikset says is that the plaintiff has to prove not simply that he spent money to buy the product, but that he paid more for the product than he would have absent the misrepresentation. And there's another important California Supreme Court case decided earlier to Kwikset called Clayworth, which makes the same point. And the point is that the economic injury, the lost money or property, is not simply the fact that payment was made but that an overcharge was incurred. And here, all plaintiffs have is their allegation that a payment was made. They have no allegation that they were overcharged for this product, that they bought for $150 and that they admit has a market value of $150. And without any allegation that there was this overcharge, there is no case for economic injury under Kwikset. Where did they admit that they paid what the product was worth? They admit that at several places in their opening brief, Your Honor. Give me one second. Your Honor, I'm sorry. I don't have it. But that has not been disputed in the case that the amount of the product was the market value of the product. So in other words, paying $20 for a lock set that was falsely labeled as made in USA, when you wanted a lock and let me back up. Let's say there's a lock set. It says made in USA. It's falsely labeled and there's a $20 price tag on it. You buy that lock set thinking it was falsely made, thinking it was made in the USA. It turns out it was falsely made elsewhere. It turns out it was made elsewhere. And in fact, you would have only paid $15 for it had you known the truth. In that instance, you have standing. You have lost money because there has been an overcharge. Maybe you wouldn't have bought it at all. What if you wouldn't have bought it at all? That's in quicksand. That is not the relevant consideration. The relevant consideration. I'm going to take your example. You think it's made in the United States and you say, okay, I'll buy it for $20. Now, the seller says to him, okay, we misrepresented it. You would have bought it for $15. So you lost $5. Suppose he wouldn't have bought it at all because he only buys goods that are made in the United States. If he wouldn't have bought it at all, the only way he is going to, let's assume he wouldn't have bought it at all. You still have to establish that there was an overcharge, not simply that you made a payment. And that's what quicksand says quite clearly. Where does it say that in quicksand? It says that at 329 of the opinion, Your Honor. 329 of the opinion? Yes. Hold on. Let me see if I can. Okay. Let me. I've only got the other. Yeah, 329. And that's the 51 Cal 4th. Right, 51 Cal 4th. Okay. So 329? 329, 330. Okay. Let me see if I can find it. And it says for each consumer who relies. Do you happen to have a specific second page? Yes, I do. I do. 877 and it would be 890. 890? Okay. Hold on. Just give me a second. And there's other places, too. But what I would point you to is the paragraph that says, starts, for each consumer who relies on the truth and accuracy. Hold on. Hold on. Let's see if we can find that. Okay. All right. Have you found it? Yeah, I got it. I have it here. Okay. For each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same. The consumer has purchased the product that he or she paid more for than he or she otherwise might have been willing to pay if the product had been labeled accurately. Okay? If they were just concerned about the mere fact that you have paid money to buy a product, they wouldn't have said paid more. They would have just said paid. And that comes up in another section, too, Your Honor. Well, on the beginning of the next paragraph, it says, a consumer who relies on a product label and challenges the misrepresentation contained therein can satisfy the standing requirement of Section 711 by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation. That's correct, Your Honor. And what we submit is that it would be a mistake to indiscriminately apply that broad language. Why would that be? I mean, it is. It says what it says. Yes, but it said it. It said it in an entirely different context. You want us to read it out. No, no, no. You should do. No, I want you to limit it to the context in which you're saying it. And I don't want you to include. How about limiting the paragraph you read us to that context or that case? This one goes on to discuss what's happening in our case. That language was clearly not contemplating the situation we have here. That language was contemplating the situation where the product itself was different than is advertised, where, for example, you have a Cartier watch. You think you're buying a Cartier watch, and you're actually buying a knockoff watch. Why? What's the difference? He wouldn't have bought it if it hadn't been for the misrepresentation. No. The next sentence after the one I read, it says, that assertion is sufficient to allege causation. The purchase would not have been made but for the misrepresentation. Yes, and in the instance where the product itself is different than is advertised, that makes sense because when the product itself, when you've got, when you think you're buying a Cartier watch, but you're actually buying a Cartier knockoff, it's reasonable to assume that there has been an overcharge in the product. It's reasonable to assume that the value you think you're getting is not what you're actually getting with respect to the product, okay? But when the product you're buying is exactly the product you think you're buying, here you want to buy Samsonite luggage, and Samsonite luggage is what you get, and your only complaint is that the price advertised as the regular price was incorrect, then there's no basis to assume that you have been overcharged for the product and it is the overcharge that creates the lost money or property. I guess we just have a disagreement about how you read Kwikset. That's all. And also we've run out of time.  Thank you very much. Thank you. Thank you. Thank you. I'll be short. I hate to bring my mother-in-law into this, but she's a perfect example. She lives for Black Friday, and she goes out and spends so much money thinking she's getting a deal on things, and that's all fine and good, but I promise you she would not be spending that money unless she believed that she was getting a deal. Counsel has talked about an overcharge over and over again here, but the problem is he's using the wrong measurement of what the overcharge is. Kwikset talks about an overcharge being where a consumer spends money or pays more than he or she otherwise might have been willing to pay. That's the measurement of the overcharge, what the consumer would have been willing to pay, not what the product actually sells for in the open market. That's an entirely different measurement that Kwikset doesn't talk about. It's the subjective measurement of value that the consumer makes when they decide to spend their money. And just to follow up on one final point, when we're talking about the allegation of would not have paid, Kwikset specifically, as the Court has recognized, says that standing exists when the plaintiff alleges that he or she would not have bought the product but for the misrepresentation. That includes the entire spectrum of I would have paid less. I wouldn't have bought it for the amount I paid for it. It includes everything from I wouldn't have paid a penny to I would have paid a penny less, whatever that may be. And we don't need to articulate or decide what that measurement is. It just suffices that the consumer would have paid less absent from misrepresentation. It may have been zero, and that's what we allege. Could you have amended your complaint to track the paid more than you otherwise would have? We could, but we've actually tracked the language that says, a consumer who relies on a product label and challenges the misrepresentation contained therein can satisfy the standing requirement by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation. That's in Kwikset. So I think our allegations are exactly in sync with Kwikset. Well, yeah, but I'm just wondering whether if it wasn't, if Kwikset were read more narrowly at some point in the future by the California Supreme Court. I think it would come to, it depends on the circumstances. And discovery is going to probably reveal what, if anything, our client would have paid to buy these products. And you've also got this as a class action. So are you going to have to prove that up on an individual basis? I do not believe so, Your Honor. Certainly that's not what's been addressed. But I would strenuously say no. That's not what we're going to have to prove. That may be the next time we see you. We might see you again. If there's any other questions, I'd be happy to answer them. Otherwise, I think it does come down to applying Kwikset to these facts. And I'll just note, we submitted the decision in the Spann v. J.C. Penney case that came out after we'd finished our briefing here. And that is a correct application of Kwikset to the identical facts and circumstances. We would urge the Court to do the same here. It's getting late. Okay. Thank you both. Thank you. The case is currently submitted. The Court will stand in recess for the day.
judges: Reinhardt, Wardlaw, Paez